EMPIRE FIRE AND MARINE INSURANCE COMPANY, Plaintiff–Appellant,

v.

J. TRANSPORT, INC., Defendant–Appellee, Third–Party Plaintiff,

v.

PAXTON NATIONAL INSURANCE COMPANY, Third–Party Defendant, Appellee.

No. 88–8434.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1989.

William E. Gray, II, Atlanta, Ga., plaintiff-appellant.

Robert L. Goldstucker, Nall, Miller, Owens, Hocutt & Howard, Michael Hostetter, Atlanta, Ga., for Paxton Nat. Ins. Co.

John H. Smith, Smith, Gilliam & Williams, Gainesville, Ga., for J. Transport, Inc.

Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

The application of the doctrine of res judicata to declaratory judgment actions is at issue in this case. We conclude that the district court erroneously applied the rules of res judicata. Accordingly, we reverse and remand the case to the district court.

This diversity action is the aftermath of a personal injury action originally filed in the United States District Court for the Eastern District of Kentucky. J. Transport, Inc. ("J. Transport") is a Georgia motor contract carrier. On July 8, 1982, one of J. Transport's drivers was involved in a collision in Kentucky. The driver of the other vehicle, Mrs. Gerlene Sword, and her husband filed a personal injury action naming the driver, J. Transport, the company that owned the leased truck, and two insurance companies as defendants.

Prior to the accident, J. Transport maintained a policy of insurance with Empire Fire and Marine Insurance Co. ("Empire"). The policy contained an endorsement required by Interstate Commerce Commission ("ICC") regulations which obligated Empire to pay, within policy limits, any judgments recovered by a member of the public and which resulted from the negligent operation of vehicles by J. Transport in interstate commerce. *See* 49 U.S.C. Sec. 10927 (formerly 49 U.S.C.App. Sec. 315). The endorsement also contained a provision for reimbursement of sums paid pursuant to the endorsement. In addition, ICC regulations require the insurer to file a certificate of insurance with the states in which the carrier will be doing business.

Subsequently, J. Transport acquired several other vehicles and sought a new policy of insurance from Paxton National Insurance Co. ("Paxton"). It is undisputed that J. Transport paid the premium on the Paxton policy and the policy went into effect at midnight July 1, 1982, approximately a week before the accident. The vehicle involved in the accident was specifically listed on the Paxton policy. While J. Transport instructed its agent to cancel the Empire policy, this had not been accomplished at the time of the accident. Consequently, J. Transport had paid for and was insured under two separate policies of insurance on July 8, 1982.

After the collision, J. Transport demanded that Paxton assume its defense pursuant to the terms of the new policy. Paxton refused to enter a defense on behalf of J. Transport. Empire, recognizing its obligations resulting from the ICC endorsement and the certificate of insurance on file with the State of Kentucky, hired counsel to defend J. Transport.

After the personal injury action was filed, Empire retained separate counsel and filed a "Counter–Claim for a Declaration of Rights," contending that Paxton was primarily and ultimately liable and should assume full responsibility for the defense of J. Transport. The court ordered the two insurance companies to brief the issues and provided that within ten days thereafter "any interested party" could brief the insurance coverage issue. All relevant pleadings and orders were served on counsel for the parties in the personal injury action.

Subsequently, the Kentucky court issued a declaratory judgment finding both Empire and Paxton liable and ordered each company to contribute to the judgment or settlement "in the same ratio as the limits of their policies bear to each other." Since they both carried $500,000.00 limits, the two companies each paid one-half of the $298,667.84 settlement which was reached after the court's ruling.

Empire then filed the present action seeking indemnification or reimbursement from J. Transport for the sums Empire expended as the result of defending J. Transport. Prior to entering a defense for J. Transport, Empire had issued a "nonwaiver agreement." This reservation of rights indicated that if Empire was required to provide coverage pursuant to the ICC endorsement, then it would seek reim-

bursement from J. Transport. At the district court, J. Transport denied any liability to Empire and filed a third-party complaint against Paxton, contending that as between the insurance companies, Paxton was primarily liable and is obligated to pay the entire judgment. Furthermore, J. Transport claimed that Empire voluntarily entered the defense and sought the "declaration of rights," and could have asked the court to determine its right to be reimbursed by J. Transport. Thus, J. Transport contended that Empire is barred from raising this issue due to the principle of res judicata. Alternatively, J. Transport claimed that it is not bound by the Kentucky order because it was not a party and, therefore, it may relitigate the coverage issue.[1]

Paxton answered and contended that the Kentucky order is res judicata and J. Transport may not relitigate the issue of whether Paxton was obligated for more than one-half of the judgment or whether J. Transport is obligated to reimburse Empire. Paxton also argued that the terms of its policy preclude any third-party liability to Empire.

The district court found that "[t]he doctrine of res judicata bars not only the parties and their privies from relitigating issues that were actually litigated, but also bars them from relitigating all issues that could have been raised in an earlier action. *Federated Dept. Stores v. Moitie*, 452 U.S. 394, 398 [101 S.Ct. 2424, 2427–2428, 69 L.Ed.2d 103] (1981); *Interstate Pipe Maintenance, Inc. v. F.M.C. Corp.*, 775 F.2d 1495, 1497 (11th Cir.1985)." While the court noted that it had some reservations about the correctness of the Kentucky court's decision, "the res judicata consequences of this final unappealed judgment are not altered by the fact that the judgment may have been wrong. *Federated*, [ ] 452 U.S. at 398, [101 S.Ct. at 2427–2428]."

▪ Applying the federal law of res judicata,[2] the court below concluded that the

---

**1.** As an initial matter, we find that J. Transport's contention is without merit. J. Transport claims it is not bound by the Kentucky judgment because it was not a party and received no notice that a motion for declaratory judgment was pending. However, the record is clear that J. Transport was a party to the Kentucky action and that J. Transport's defense counsel, W.R. Patterson, Jr., was served with all pleadings, including notice of the declaratory judgment action. Indeed, J. Transport in its brief identifies Mr. Patterson as "counsel retained by Empire to defend J. Transport in the Kentucky action." Rule 5(b) of the Federal Rules of Civil Procedure states, "[w]henever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court." The issue of whether J. Transport received notice from its counsel of the declaratory judgment action is irrelevant to the issues presented in this case. As the district court properly noted, "[i]f counsel failed to notify J. Transport of the proceedings or failed to adequately protect J. Transport's interests in the proceeding, this is a matter between client and attorney which is separate and distinct from the controversy in the present case."

**2.** The lower court properly noted that while the parties have been relying on Georgia principles of res judicata, "it is clear that in a diversity action, a federal court must apply the federal law of res judicata when deciding whether to give preclusive effect to a prior *federal* court decision. *Precision Air Parts, Inc. v. Arco [Avco] Corp.*, 736 F.2d 1499 (11th Cir.1984), *cert. denied*, 469 U.S. 119 [1191, 105 S.Ct. 966, 83 L.Ed.2d 970] (1985)." Although there are still some cases that say that when the federal court is exercising its diversity jurisdiction, the law of the state where it sits determines the preclusive effect of its judgment, *see e.g., Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 351 n. 17 (D.C.Cir.1981), this view is erroneous. As Judge Medina wrote in a well-known decision:

> One of the strongest policies a court can have is that of determining the scope of its own judgments [citation omitted]. It would be destructive to the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity.... The Erie doctrine [*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] is not applicable here....

*Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir. 1962). Most courts have now taken the view that "state law cannot control the preclusive effects of a federal court judgment, regardless of the nature of the case the federal court was deciding." Wright, Law of Federal Courts, Sec. 100A p. 695–96 4th ed. (1983); *see* Restatement Second of Judgments, Sec. 82 (1982) ("Federal law determines the effect under the rules of res judicata of a judgment of a federal court").

Kentucky judgment must be given preclusive effect. The district court held:

> The Kentucky court had these same three parties before it and was asked to determine the extent of the obligations of Empire And Paxton. While Empire contends that the court was only presented with the question of Empire's and Paxton's liability to the Swords, Empire could have asked the court for a determination of the two companies liabilities vis-a-vis each other. In addition, J. Transport or Empire could have asked for a declaration of J. Transport's obligations to Empire pursuant to the endorsement. Accordingly, since these issues could have been raised in the Kentucky action, they are barred by the principles of res judicata from being litigated in a subsequent action between the same parties.

Empire argues in this appeal that the district court erroneously relied upon the general principles of res judicata in granting summary judgment in favor of J. Transport. Empire contends that a preclusive effect should not be given to orders rendered in a declaratory judgment action. In support of this proposition, Empire relies upon *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir.1978),[3] which stated that ordinary principles of res judicata cannot be applied automatically to prior declaratory judgment actions. According to Empire, the supplemental nature of such relief requires that preclusive effect can only be given to relitigation of any issue actually litigated and necessary to the judgment rendered. Empire argues that since only the issue of insurance coverage, and not the issue of reimbursement, was actually litigated in the Kentucky action, then res judicata cannot bar Empire's present claim for reimbursement.

J. Transport and Paxton argue that Empire mistakenly relies upon *Kasper* in an effort to avoid the effect of res judicata. According to their argument, *Kasper* stands for the proposition that where a declaratory judgment is resolved through the actions of the parties themselves by consent or as part of a settlement, a stated "dismissal with prejudice" of that action will not be given a preclusive effect in future litigation. In this case, the declaratory judgment was contested and resolved only by order of the court and was not resolved by way of consent, agreement or as part of a settlement. Since a consent or settlement was not the vehicle which resulted in the resolution of the declaratory judgment action, but rather the declaratory action was resolved by order of the court, traditional principles of res judicata apply which preclude Empire from maintaining the present action for reimbursement.

In *Kasper*, the former Fifth Circuit held that, under the Declaratory Judgment Act ("the Act"), 28 U.S.C. Sec. 2201,[4] ordinary

---

**3.** In *Kasper*, the plaintiff and the defendant were business competitors. The plaintiff filed an initial lawsuit for patent infringement. The defendant then brought an action against the plaintiff seeking a declaratory judgment that a separate patent was invalid. The first suit was tried to a verdict, but before judgment became final, the two parties settled the first suit, and as part of their agreement, the defendant dismissed the second suit. A year later, plaintiff filed a third suit against the defendant for the infringement of the patent which was the subject matter of the second action. Plaintiff contended that the dismissal with prejudice of the second suit, brought to determine the validity of the patent, was res judicata to the defendant's contentions in the third suit. The trial court held that a consent judgment dismissing a prior suit brought for a declaratory judgment of patent invalidity and non-infringement did not bar or estop the defendants from contesting the validity of the plaintiff's patent in plaintiff's subsequent infringement action. On appeal, the court affirmed, and held that because the prior consent decree was based entirely on the consent of the parties and involved neither a judicial determination nor a stipulation of the parties with respect to the validity of the patent or to its infringement, it did not preclude further examination of those issues.

**4.** The Act provides in pertinent part:

> In a case of actual controversy ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.* Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. Sec. 2201 (1982) (emphasis supplied). As emphasized above, the Declaratory Judgment

principles of res judicata "cannot be applied automatically to judgments dismissing suits for declaratory relief without stated reasons." 575 F.2d at 535. In reading this conclusion, the court succinctly defined the relatively complex doctrine of res judicata as follows:

> The rules of *res judicata,* as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true *res judicata.* It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." [citation omitted]. When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." [citation omitted]. Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. [citation omitted]. The aim of claim preclusion is thus to avoid multiple suits or identical entitlement or obligations between the same parties, accompanied, as they would be by the redetermination of identical issues of duty and breach.
>
> The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. [footnote omitted]. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. [citation omitted]. It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered. [footnote omitted].

*Id.* at 535–36.

After reviewing the rules of res judicata, the court noted that the Declaratory Judgment Act itself suggests that the application of rules of claim preclusion in the usual way may be inappropriate given the purposeful supplemental nature of declaratory relief. 575 F.2d at 536–37. The second section of the Act, 28 U.S.C. Sec. 2202, states:

> Further necessary and proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

The *Kasper* court explained that "this language necessarily implies that a declaratory judgment does not embrace that aspect of res judicata known as merger: the prevailing party may seek further relief in the form of damages or an injunction. [citations omitted]." 575 F.2d at 537. In addition, the court found that the "further relief" provision of Section 2202 does not prevent the application of res judicata as a bar. However, the *Kasper* court emphasized:

> [S]ection [2202] indicates the supplementary nature of declaratory relief, and recognizes implicitly that an issue presented for declaratory relief may not, in fact, be coextensive with the rights and obligations flowing from the same transaction if presented in the context of a conventional suit.... In short, unless a declaratory suit necessarily presents all questions of duty and breach that would have arisen in a claim brought by the defendant against the plaintiff in a conventional suit, a determination whether the judgment should have preclusive ef-

---

Act gives the court discretion to render such declarations. *See Hollis v. Itawamba County Loans,* 657 F.2d 746, 750 (5th Cir. Unit A 1981); *Public Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962).

More importantly, the Act contemplates by its very language the supplemental nature of declaratory relief and that other relief may ultimately be available to the litigants.

fect is not necessarily advanced by trying to characterize some set of issues in a declaratory suit as a "claim" or a "cause of action" and then applying claim preclusion rules reflexively to that "claim." [citation omitted].

*Id.*

The court concluded that the preclusive effect of a prior declaratory proceeding should be viewed, within the usual framework of res judicata, as presenting a special problem of issue preclusion. Thus, "[u]nder the usual rationale of issue preclusion, there is no reason to permit the relitigation of any issue actually litigated and necessary to the judgment rendered in such an anticipatory declaratory action." *Id.*

After holding that the general rules of res judicata were modified with respect to declaratory judgments, the *Kasper* court next considered the res judicata effect to be given a consent judgment dismissing a declaratory judgment action following a voluntary settlement between the parties. The Fifth Circuit found that an extra judicial settlement or compromise, such as a consent decree, is distinguishable from a judicial decision when determining its res judicata effect. The court stated:

Judicial finality—the predicate for *res judicata*—arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction. [footnote omitted]. Thus, if the parties to a suit enter into an extra judicial settlement or compromise, there is no judgment, and future litigation is not barred by *res judicata* or collateral estoppel [footnote omitted] though, of course, a court may dismiss litigation thereafter filed on the same claim on the

basis that the parties have by contract ended their controversy....

Such a consent decree, [ ] is not identical in effect to the conclusion reached by a judge after a trial; thus an appeal on the merits usually does not lie from it. The parties' proposal does not reflect the considered judgment of a judicial officer....

575 F.2d at 537–38. Accordingly, the court held that "[t]he rules applicable to the effect of a judicial determination should not be applied automatically to consent judgments." *Id.* at 538.[5]

Although the facts of *Kasper* are readily distinguishable, we are persuaded that the reasoning of the former Fifth Circuit with respect to the preclusive effect of declaratory judgments is directly applicable to the present case. The *Kasper* court made clear that ordinary principles of res judicata cannot be applied automatically to declaratory judgments. The court emphasized the supplemental nature of such relief requires that preclusive effect can only be given to relitigation of any issue *actually* litigated and necessary to the judgment rendered.[6]

The issue for determination in this appeal is whether the court below properly barred Empire from litigating its claim for indemnification under the doctrine of res judicata. The court held that Empire is precluded by the principles of res judicata from litigating the issue of reimbursement because this issue *could* have been raised in the Kentucky action. As the *Kasper* court made clear, however, the preclusive effect of a prior declaratory proceeding should be viewed, within the usual framework of res judicata, as presenting a special problem of

---

5. The court emphasized that the central inquiry in determining the preclusive effect of a consent decree is the intention of the parties. "Whatever the type of repose is sought to be invoked as a result of a judicial consent decree, a court should take into account the fact that it was rendered by consent and determine its impact by the issues actually intended to be precluded by the parties." 575 F.2d at 539. Such intent can be inferred from the language in the agreement or from the record. *Id.* at 540.

6. The holding of *Kasper* is supported by Restatement Judgments 2d Sec. 33 (1982):

A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action.

*See* Wright, Law of Federal Courts, Sec. 100, p. 677 4th ed. (1983); *see also* 18 Wright Miller & Cooper, Jurisdiction Sec. 4446 (1981).

issue preclusion. Since the parties did not actually litigate the issue of reimbursement in the prior declaratory action, the parties are not barred by the doctrine of res judicata from litigating this claim in the present action.[7]

In the declaratory action, the two insurance companies sought "a determination as to the rights and liabilities of each under insurance policies obtained by J. Transport...." Pursuant to Empire's counterclaim for declaratory relief, and Paxton's cross-claim, the Kentucky court issued a declaratory judgment.[8] The court provided that such a judgment was a final judgment, and, thus, subject to appeal. The court's order was not appealed by any party. Consequently, the declaratory judgment of the Kentucky court is final and conclusive as to any issues which were actually litigated and determined in that proceeding.

In order to determine the preclusive effect of the declaratory judgment action in the present case, we must determine which issues were actually litigated and decided by the Kentucky court. In its counterclaim for declaratory relief, Empire asked the court to declare that its policy did not apply to the claim and that Paxton's policy did apply. Specifically, Empire argued that its policy had been cancelled in favor of Paxton's policy, that Paxton specifically intended coverage, that the ICC filings did not subvert this intent, and that Paxton was bound by the specific terms of its policy. In addition, the Kentucky court noted that Empire argued that it had "no liability on its policy because the policy did not specifi-

cally list the truck as covered and no premium was received." In response, Paxton filed a cross-claim for declaratory relief contending that Empire was primarily liable to J. Transport.

The Kentucky court held "that both Paxton and Empire had provided coverage for J. Transport at the time of the accident, and, consequently, the court adjudges that they contribute to any judgment or settlement in the same ratio as the limits of the respective policies bear to each other." The court found that Empire was liable due to provisions of the policy which provided that the insurer "agrees to pay, within the limits of liabilities described herein, any final judgment against the insured ... regardless of whether or not each motor vehicle is specifically described in the policy" and due to filings made with the Interstate Commerce Commission and the State of Kentucky which indicated that J. Transport was covered by Empire's liability insurance.

The issue before the court in Kentucky was whether Empire or Paxton, or both, had provided insurance coverage for J. Transport at the time of the accident. The record is uncontrovertible that the court determined that both Empire and Paxton provided coverage. Thus, the issue of "insurance coverage" was actually litigated and determined in the prior declaratory action and the parties are now barred by the doctrine of issue preclusion from relitigating this issue in the present action.

---

7. J. Transport seems to argue that it would be "inequitable" for the court to find that the doctrine of res judicata does not preclude Empire from maintaining its present action for reimbursement for J. Transport. But as Justice Rehnquist has stated,

[W]e do not see the grave injustice which would be done by the application of accepted principles of res judicata. "Simple Justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case.

*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).

8. We recognize that the Kentucky action did not originate as a declaratory action; rather the suit was filed by plaintiffs as a conventional suit seeking damages for personal injuries. Nevertheless, the fact that Empire filed a declaratory judgment action as a counterclaim in the underlying action does not alter our analysis. The supplemental nature of declaratory relief, whether filed as an original action or as a counterclaim, requires that preclusive effect can be given only to relitigation of any issue actually litigated and necessary to the judgment rendered. Moreover, no cases have been cited by any party which attempt to distinguish this case on such a basis.

The Kentucky court, in addressing the issue of insurance coverage and finding coverage pursuant to the endorsement, necessarily determined that Empire's insurance policy was still in effect at the time of the accident. The court refused, however, to rule on Empire's argument "that it had no liability under its policy because the policy did not specifically list the truck covered and no premium was received." It is clear, then, that the Kentucky court did not actually decide the issue of whether there was coverage under Empire's policy with J. Transport independent of the ICC endorsement.

In the action below, Empire's theory of recovery against J. Transport is based upon contractual indemnification pursuant to an endorsement as required by federal law. The terms of the endorsement, attached to a part of Empire's policy of insurance with J. Transport, sets forth J. Transport's agreement to reimburse Empire for any payment made by Empire to a third-party by reason of the endorsement.[9] Empire argues that it is entitled to summary judgment because Empire's liability in the underlying action "arose solely by virtue of the endorsement."

Contrary to Empire's contentions, the Kentucky court did not determine whether Empire's liability in the underlying action arose "solely" by virtue of the endorsement. Since Empire's policy of insurance was in effect at the time of the accident, the provisions of the policy may provide an independent basis for Empire's liability.[10] It is clear that while ICC regulations require the carrier, or its certified insurer, to protect the public from loss due to negligent acts, the regulations do not alter or affect the obligations between the insured and the insurer, or where there is more than one insurer, the apportionment of liability between them. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 39–40, 96 S.Ct. 229, 234–235, 46 L.Ed.2d 169 (1975); *Carolina Casualty Ins. Co. v. Un-*

---

**9.** This endorsement was included in the policy of insurance, and filed with the Interstate Commerce Commission, pursuant to the requirements of the Interstate Commerce Act, 49 U.S.C. Sec. 10927. The endorsement provides in pertinent part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the Company [Empire] agrees to pay, within the limits of liability prescribed herein, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others ..., resulting from negligence in the operation, maintenance, or use of motor vehicles regardless of whether or not such motor vehicles are specifically prescribed in the policy....
>
> It is understood and agreed that no conditions, provision, stipulation, or limitation contained in the policy ... shall relieve the Company from liability or from the payment of any final judgment.... However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, *and the insured agrees to reimburse the Company ... for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.*

**10.** J. Transport's contends that Empire's liability arises from the provision of the policy concern-

ing coverage for newly-acquired automobiles. Specifically, the policy under which Empire provided insurance to J. Transport states:

> Part II—WHICH AUTOS ARE COVERED AUTOS
>
> .    .    .    .    .
>
> B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS
>
> .    .    .    .    .
>
> 2. If we insure all of your autos and you acquire another auto and it does not replace a covered auto:
> a. We will provide LIABILITY INSURANCE coverage(s) for that auto for 30 days from the date you take delivery of it and premium will be charged.

J. Transport submits that it is undisputed that the 1975 Mercedes truck was acquired and placed in service within the thirty-day provision for coverage on newly-acquired vehicles. Since cancellation of Empire's policy of insurance issued to J. Transport had not been perfected at the time of the accident, J. Transport argues that those provisions of the insurance policy which provided for newly-acquired vehicles and extended coverage under the insurance policy for a period of 30 days from the date of acquisition remained a part of the policy of insurance issued by Empire to J. Transport. Although we expressly declined to address the merits of this argument, we recognize that this is an issue to be addressed by the district court on remand.

*derwriters Ins. Co.,* 569 F.2d 304, 313 (5th Cir.1978).

We conclude that the district court erred in granting summary judgment in favor of J. Transport on the grounds that Empire is precluded by the principle of res judicata from litigating the issue of reimbursement. Accordingly, the judgment of the district court is REVERSED, and the case is RE-MANDED to the district court for further proceedings consistent with this opinion.