**Robert H. JONES, Plaintiff,**

v.

**NEW ENGLAND LIFE INSURANCE CO., et al., Defendants.**

**No. 6:95–cv–19 (WLS).**

United States District Court,
M.D. Georgia,
Thomasville Division.

Nov. 1, 1996.

Robert H. Jones, Valdosta, GA, pro se.

H. Sanders Carter, Jr., Kenton J. Coppage, Atlanta, GA, for Defendants.

### *ORDER*

SANDS, District Judge.

Presently before the Court is Defendants' motion for summary judgment.

### *Background*

Plaintiff brought this case in the Superior Court of Brooks County, Georgia, seeking damages for alleged misrepresentations by an insurance agent and for alleged violations of the Georgia Insurance Code. Defendants removed the case to this Court on the basis of diversity of citizenship.

Plaintiff was employed at the Pic 'n Save Drugs store in Valdosta, Georgia. Effective June 3, 1990, National Merchandise Company, Inc., the parent owner of Pic 'n Save Drugs stores, offered long term disability insurance coverage to its employees through a group policy issued by UNUM Life Insur-ance Company. National Merchandise also allowed employees to select alternate individual disability insurance and to pay premiums through payroll deduction.

In 1990, Cheryl Katz, Employee Benefits Manager for National Merchandise, spoke with plaintiff and other employees at the Valdosta store. In addition to her employment by National Merchandise, Katz was also an insurance agent authorized to submit applications to defendant New England Insurance Company ("New England"). Apparently based on his conversation with Ms. Katz, plaintiff applied for a disability policy from New England. In response to his application, plaintiff received policy number D171629.

On July 21, 1993, plaintiff filed a civil action against New England in Seminole County, Florida seeking disability benefits under policy number D171629 and punitive damages. Plaintiffs Seminole County complaint read, in relevant part:

> My name is Robert H. Jones. By profession, I am a pharmacist, sixty years of age, and a veteran. I am an honest law-abiding citizen and of the Baptist faith since age eleven.
>
> Several years ago I took out a disability policy with THE NEW ENGLAND. The policy # D 171629. I became disabled and THE NEW ENGLAND paid what they agreed for several months. For no apparent reason they discontinued their payments. I am sueing [sic] THE NEW ENGLAND for $180,000.00 (one hundred eighty thousand and no/100) actual amount owed, and for ten million ($10,000,000.00). I am doing this to keep THE NEW ENGLAND, A[sic] large company, from cheating anyone else.

New England removed the Seminole County case to the United States District Court for the Middle District of Florida, Orlando Division, and filed counterclaims for rescission and restitution. The Florida case culminated in a trial by jury, and the verdict entered by the Court read, in relevant part:

> It is ordered and adjudged that Judgment be entered in favor of Defendant, New England Mutual Life Insurance Company, and against Plaintiff, Robert H. Jones on

the jury verdict on the claims of Plaintiff, Robert H. Jones.

On the claim for recission [sic] and restitution of Defendant, New England Mutual Life Insurance Company, Judgment is entered in favor of Defendant, New England Mutual Life Insurance Company and against Plaintiff, Robert H. Jones as follows:

a) The Disability Policy No. D 171629 is rescinded;

b) Defendant, New England Mutual Life Insurance Company, shall pay to Plaintiff, Robert H. Jones, the amount of premiums paid by Plaintiff to Defendant in the amount of $1,537.47;

c) Plaintiff, Robert H. Jones shall pay to Defendant, New England Mutual Life Insurance Company, the benefits Defendant paid to Plaintiff in the amount of $15,000;

d) Thus, Judgment is entered in favor of Defendant, New England Mutual Life Insurance Company, and against Plaintiff, Robert H. Jones, on the claim of rescission and restitution, in the amount of $13,-462.53.

Plaintiff appealed the decision of the Florida District Court to the Eleventh Circuit, but the appeal was dismissed for want of prosecution on January 9, 1996.

Plaintiff filed the instant complaint in the Superior Court of Brooks County Georgia on February 22, 1995. Plaintiff's complaint reads, in relevant part:

My name is Robert H. Jones and I was working as a pharmacist for Pic and Save Drugs in Valdosta, Ga., beginning in 1987. I was covered under a disability policy from that time until 1990 when I was enticed by false promises to give up my coverage to purchase a policy which resulted in no coverage as this policy was rescinded by the insurance company based on the medical questionaire [sic]. This suit I based not on that policy but on the fact that New England through thier [sic] agents did not abide by the insurance laws of Georgia as far as replacement law, misrepresentation and other appliciable [sic] laws. These illegal actions caused me damages in amount of $1,000,000.00 actual damages and $10,000,000.00 injury and damages otherwise. I am asking $100,-000,000.00 in punitive damages.... I am

also sueing [sic] because of the illegal act that the defendants used forms not on file with State of Georgia and approved by the Georgia State Insurance Comm. as the enticement for me to drop my disability insurance and buy a policy of less coverage and reliability and as result of these illegal tatics [sic] I have suffered greatly.

Defendants' motion for summary judgment asserts that plaintiff's claims are either barred by the doctrine of res judicata or should be dismissed for failure to state a claim upon which relief can be granted.

### *Discussion*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories-and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this regard, the nonmoving party must put forth more than a mere scintilla of evidence, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). Further, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Notwithstanding the fact that a court must consider evidence in the light most favorable to the nonmoving party, *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1556 (11th Cir.1987), a party opposing summary judgment "still bears the burden of coming forward with sufficient evi-

dence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987).

■ In their motion for summary judgment, Defendants assert that Plaintiff's claims are barred by the doctrine of res judicata. Before addressing the substance of this defense, the Court must determine whether to apply federal or state law principles of claim preclusion. However, the Eleventh Circuit has created two inconsistent lines of precedent in answering the question of whether a federal court should apply state law or federal law in determining the preclusive effect of a prior federal court judgment. For the reasons set forth below, this Court finds that the federal common law of res judicata applies when a federal court examines whether a claim is precluded by the prior judgment of another federal court.

In *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985), the Court of Appeals stated in the most unambiguous terms that federal law applies in cases such as that presently before the Court.

> When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law.

*Id.* at 1503. The Court of Appeals reaffirmed this position in *Empire Fire and Marine Insurance Co. v. J. Transport Inc.*, 880 F.2d 1291 (11th Cir.1989).

> The lower court properly noted that while the parties have been relying on Georgia principles of res judicata, "it is clear that in a diversity action, a federal court must apply the federal law of res judicata when deciding whether to give preclusive effect to a prior federal court decision."

*Id.* at 1293 n. 2. In the remainder of this lengthy footnote, the Court of Appeals went on to straight forwardly reject the notion that state principles of claim preclusion should apply in such an instance, stating:

> Although there are still some cases that say that when the federal court is exercising its diversity jurisdiction, the law of the state where it sits determines the preclusive effect of its judgment, *see e.g.*,

*Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 851 n. 17 (D.C.Cir.1981), this view is erroneous. As Judge Medina wrote in a well-known decision: One of the strongest policies a court can have is that of determining the scope of its own judgments. It would be destructive to the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity.... The Erie doctrine ... is not applicable here.... *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962). Most courts have now taken the view that "state law cannot control the preclusive effects of a federal court judgment, regardless of the nature of the case federal court was deciding." Wright, *Law of Federal Courts*, Sec. 100A p. 695–96 4th ed. (1983)....

*Id.* In *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498 (11th Cir.1990), the Court of Appeals cited *Empire Fire and Marine* while again supporting the position that federal law is the proper choice of law for questions of res judicata in cases such this.

> [E]ven in a case which rests its subject matter jurisdiction solely upon diversity of citizenship, a federal court must apply federal law to determine the preclusive effect of a prior federal judgment.

*Id.* at 1501. *See United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir.1994), (citing *Citibank* ); *Gibbs v. Air Canada*, 810 F.2d 1529, 1535 (11th Cir.1987) ("Federal law governs the res judicata effect of a prior judgment in a diversity action in a subsequent diversity case"); *Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.1986) ("[W]e apply federal common law because we are determining the preclusive effect of a federal judgment").

The Eleventh Circuit has never directly overruled its holdings on this issue as set forth in *Precision Air Parts* and its progeny. However, without acknowledging this line of case law, the Court of Appeals took a conflicting viewpoint in *NAACP v. Hunt*, 891 F.2d 1555 (11th Cir.1990), stating:

Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata.

*Id.* at 1560. Relying exclusively on *Hunt,* the Eleventh Circuit reiterated this blanket rule in *Manning v. City of Auburn,* 953 F.2d 1355 (11th Cir.1992), stating, "Federal courts apply state law to questions of res judicata." *Id.* at 1358.

In 1993, after determining that the "relitigation exception" to the Anti–Injunction Act "is essentially a res judicata concept," the Court of Appeals again looked exclusively to *Hunt* in finding that state law applies with respect to a res judicata analysis of a prior federal court holding. *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994). *See Diaz v. Moore,* 861 F.Supp. 1041, 1047 n. 16 (N.D.Fla.1994) (refusing to apply federal law to res judicata analysis of prior federal judgment because court was "bound by the Eleventh Circuit Court of Appeals statement to the contrary in *Wesch* ").

As discussed above, *NAACP v. Hunt, supra,* 891 F.2d at 1560, is the starting point in the line of Eleventh Circuit cases which hold that federal courts must apply state law when adjudicating the preclusive effect of a prior judgment from any court—state or federal. In establishing this doctrine in *Hunt,* the Eleventh Circuit cited only to *McDonald v. Hillsborough County School Bd.,* 821 F.2d 1563, 1565 (11th Cir.1987). An examination of *McDonald,* however, reveals a far narrower holding than that reached in *Hunt.* In *McDonald,* the Court of Appeals was considering the preclusive effect which a federal district court should give to a prior state court judgment. The Court of Appeals held:

A federal court must apply the law of the state in which it sits with respect to the doctrine of res judicata. Title 28 U.S.C. § 1738 requires a federal court to give the same preclusive effect to a state court judgment as the state court would give.

*Id.* at 1565 (emphasis added) (citing *Migra v. Warren City School District Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). The application of this doctrine to prior federal court judgments appears beyond the scope of the ruling set forth in *McDonald.* Particularly when considered in conjunction with the unambiguous,

conflicting opinions of the Eleventh Circuit, discussed above, the holdings of Hunt and its progeny seem to set forth an overbroad statement of the law.

This Court agrees with the Middle District of Alabama, which addressed the problem of inconsistent precedent on this issue within the Eleventh Circuit and held:

Although there is some conflict within this circuit, the court concludes that the better reading of the Eleventh Circuit precedent is that a federal court applies federal preclusion principles when considering the effect of a prior federal court judgment.

*Kachler v. Taylor,* 849 F.Supp. 1503, 1516 (M.D.Ala.1994). Accordingly, this Court shall apply federal common law to the defense of res judicata raised in Defendants' motion for summary judgment.

■ "The doctrine of res judicata, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Citibank, supra,* 904 F.2d at 1501. Under the federal common law of the Eleventh Circuit, "[c]laim preclusion bars a subsequent lawsuit when four elements are present: '(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases.' " *Id.* (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986)).

The record clearly shows that a final judgment on the merits was entered in *Jones v. New England Mutual Life Insurance Co.,* Case No: 93–689–Civ–Orl–19 ("the Florida case"), discussed above, and that the appeal process has run its course in that action. It is further undisputed that this decision was rendered in a court of competent jurisdiction. Thus, the first two requirements of the res judicata analysis are fulfilled in the present case.

The third requirement, identity of the parties, is not met as to both defendants in the present action, as defendant Paul Revere Life Insurance Company was not a party to the Florida case. However, only defendant

New England seeks summary judgment on the issue of res judicata in the instant motion. As to New England, the third requirement is also fulfilled.

Thus, the only remaining issue in determining whether plaintiff is precluded by the doctrine of res judicata from bringing the present action against defendant New England, is whether the present causes of action are the same as those set forth in the Florida case. The primary test in deciding whether two cases involve the same causes of action is determining whether the "primary right and duty are the same in each case." *Citibank, supra,* 904 F.2d at 1503. In making this determination, the substance of the two actions, rather than their forms, should be compared, and the scope of similar factual questions that will be reached in the second case should be examined. *Id.* In making these inquiries, "[i]t is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quoting *Ruple v. City of Vermillion, S.D.,* 714 F.2d 860, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)).

Although plaintiffs claims in the present action are presented in a slightly different manner than in the Florida case, an examination of the two complaints, quoted above, shows that the substance of the claims are fundamentally the same. In the Florida complaint, plaintiff sought damages for the wrongful denial of benefits under an insurance policy issued by New England. In addition, plaintiff obliquely asserted that he had been cheated by New England. In the present complaint, plaintiff states that he is not seeking damages under the insurance policy itself, but rather because he was enticed to purchase the policy through false promises and misrepresentations. In addition, plaintiff bases the present complaint on defendants' alleged failure to comply with unidentified regulatory laws relating to the sale of insurance in the State of Georgia.

As to plaintiff's claims of misrepresentation, it is important to note that the doctrine of res judicata "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Olmstead v. Amoco Oil Co.* 725 F.2d 627, 632 (11th Cir.1984) (quoting *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir. 1974), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974)). In his deposition, at pages 32–36, the plaintiff indicates that the misrepresentations referenced in the current complaint were either made during his conversations with Cheryl Katz in 1990 or appeared on the face of the application and insurance documents themselves. It further appears that these alleged misrepresentations related to the amount of coverage under the New England policy, as well as the medical history and incontestability provisions of that policy. These issues, relating to the formation and terms of the insurance policy, were central to the ultimate adjudication of the Florida case. Indeed, New England filed a counterclaim in that case for rescission based upon material misrepresentations, and the jury found for New England on that claim. Thus, plaintiffs present claims of misrepresentation arise from the same nucleus of operative fact as the claims and counterclaims set forth in the Florida case. An adjudication of plaintiffs current misrepresentation claims, would address the same rights and duties and require inquiries into the same questions of fact as presented in the Florida case. Plaintiff could have brought a claim for fraud or misrepresentation during the Florida case, and thus should be precluded from bringing such a claim in the instant action.

A similar circumstance was addressed in *Helmuth v. Life Ins. Co. of Ga.,* 194 Ga.App. 685, 391 S.E.2d 412 (1990). The plaintiff in *Helmuth* brought an original action for benefits under an insurance policy. Ultimately, the policy was held to be void due to material misrepresentations in the application. The plaintiff then filed a second suit, claiming fraud on the part of the sales agent, imputable to the insurer. The Georgia Court of Appeals held:

We reject as spurious appellant's argument that the fraud claim could not have been submitted in the first action because she did not know the contract was invalid. Despite appellant's protestations to the

contrary, it is clear that had she so desired, she could have included a tort claim for fraud in the first case, as the record shows that all the facts relating to the fraud claim were known to her at that time. She chose instead to rely on the contract, and she is bound by that choice. *Id.* at 413–14, 391 S.E.2d 412. Accordingly, plaintiffs misrepresentation claims are barred by the doctrine of res judicata.

 Plaintiff also claims that the defendants failed to comply with certain laws governing the sale of insurance in Georgia. The gravamen of plaintiffs regulatory claims is that certain documents used by defendants are not on file with the State of Georgia Insurance Commissioner, as required by law. The plaintiff has not cited to a statute, nor is the Court aware of any, which establishes a private cause of action for the failure to file insurance documents with the state Insurance Commissioner. Rather, the Regulations of the Georgia Insurance Department provide that a violation of the filing requirement authorizes either the revocation of the insurer's license to sell or the imposition of a fine by the state. Thus, on the issue of regulatory non-compliance, plaintiff has not presented a claim upon which this Court can grant relief.

For these reasons, there are no genuine issues of material fact as to whether plaintiff's claims of misrepresentation are barred as to defendant New England by the doctrine of res judicata, or as to whether plaintiffs regulatory claims fail as a matter of law. The only remaining question is whether plaintiffs misrepresentation claims survive against defendant Paul Revere Company. In this regard, plaintiff has failed to implicate Paul Revere Company in any of the alleged misrepresentations at the heart of plaintiffs complaint. In fact, plaintiff has not stated any claim against defendant Paul Revere Company, other than by way of general implication in plaintiffs regulatory claims. As stated, such claims fail as a matter of law.

Because no genuine issues of material fact exist as to any of plaintiffs claims against either defendant in this action, defendants' motion for summary judgment should be, and hereby is, **GRANTED.**