Larry M. KACHLER, individually and as General Partner in Bell Building Associates; Sterling B. McCall, Jr., individually and as General Partner in Bell Building Associates; Bell Building Associates, a Texas general partnership, Plaintiffs,

v.

W. Robbins TAYLOR, Sr.; Standard Realty & Investment Company, Inc.; J. Theodore Jackson, Jr.; Rushton Stakely Johnston & Garrett, P.A.; Union Bank & Trust; Robert F. Henry, Jr.; R.S. Hill, Jr.; Thomas B. Hill, Jr.; T. Bowen Hill, III; Jim T. Insco; Mark W. Johnston; Robert E. Kelly; Henry A. Leslie; Algie

**1504**

Hill Neill; Samuel L. Schloss; C.B. Shewmake, Sr.; William G. Thames; Harry J. Till, Dr.; John M. Trotman; Estate of H.O. Davis; Estate of H.P. Haas; Estate of W. Tom Jones, Defendants.

Civ.A. No. 93–T–847–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 11, 1994.

Joseph O. Slovacek, David W. Waddell, Hoover Bax & Shearer, Houston, TX, John Keith Givens, J. Farrest Taylor, Cherry, Givens, Tarver, Peters, Lockett & Diaz, P.C., Dothan, AL, for Larry M. Kachler, Sterling B. McCall, Jr., individually and as General Partner in Bell Building Associates.

John Keith Givens, J. Farrest Taylor, Cherry, Givens, Tarver, Peters, Lockett & Diaz, P.C., Dothan, AL, for Bell Bldg. Associates.

Joseph Lister Hubbard, James Hill McLemore, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, George A. Rustay, Edmund L. Cogburn, Dow, Cogburn & Friedman, P.C., Houston, TX, for W. Robbins Taylor, Sr.

Joseph Lister Hubbard, James Hill McLemore, Capell, Howard, Knabe & Cobbs, P.A., Bill R. Bludworth, Bludworth, Lippman & Herring, P.C., Houston, TX, for Standard Realty & Inv. Co., Inc.

George A. Rustay, Dow, Cogburn & Friedman, P.C., John H. Boswell, John T. Valentine, Lydia S. Zinkhan, Boswell & Hallmark, P.C., Houston, TX, Tabor R. Novak, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for J. Theodore Jackson, Jr., Rushton Stakely Johnston & Garrett, P.A.

George A. Rustay, Dow, Cogburn & Friedman, P.C., Houston, TX, Robert William Bradford, Jr., Harry Cole, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for Union Bank & Trust.

George A. Rustay, Edmund L. Cogburn, Dow, Cogburn & Friedman, P.C., Houston, TX, for Robert F. Henry, Jr., R.S. Hill, Jr., Thomas B. Hill, Jr., T. Bowen Hill, III, Jim T. Insco, Mark W. Johnston, Robert E. Kelly, Henry A. Leslie, Algie Hill Neill, Samuel L. Schloss, C.B. Shewmake, Sr., William G. Thames, Harry J. Till, Dr., John M. Trotman, Estate of H.O. Davis.

### ORDER

MYRON H. THOMPSON, Chief Judge.

In 1984, plaintiffs—Bell Building Associates, a Texas general partnership, and its two general partners, Larry M. Kachler and Sterling B. McCall, Jr., also from Texas— executed an agreement with Standard Realty & Investment Company, Inc., and its president, W. Robbins Taylor, Sr., for the acquisition of an office complex at 207 Montgomery Street in Montgomery, Alabama. Plaintiffs received financing from Union Bank & Trust Company, an Alabama bank—where Taylor served as chair of the board of directors— and received legal counsel from J. Theodore Jackson and his law firm, Rushton, Stakely, Johnston & Garrett, P.A., an Alabama firm. In 1993, plaintiffs brought this lawsuit in a Texas state court, alleging that, at the closing of the transaction, they received only a leasehold interest in the office complex, instead of the fee simple interest they expected

and had been advised they were in effect acquiring; that they simultaneously guaranteed a note to Union Bank under their mistaken belief that their fee simple interest in the office complex would serve as collateral, when, in reality, Standard Realty conveyed the office complex to the Lower Commerce Street Historical Preservation Authority, a former client of Jackson, and it was the Authority's note that plaintiffs guaranteed in exchange for a leasehold interest. Plaintiffs also assert that the office complex was contaminated with asbestos, a condition not made known to them by some of the defendants.

Plaintiffs named the following as defendants: Jackson and the Rushton law firm; Standard Realty and its president, Taylor; and Union Bank and all those who were members of its board of directors at the time of the transaction, except for Taylor.[1] Relying on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, the defendants removed the case from state court to a Texas federal court, which in turn transferred the case to this Alabama federal court. Counts I to V of the complaint charge Taylor, Standard Realty, Union Bank, and the bank's directors with fraud; count VI charges Standard Realty with breach of the purchase agreement; counts VII, VIII, and IX charge Jackson and the Rushton law firm with negligence, breach of fiduciary duty, and breach of contract; and count X charges all defendants with civil conspiracy to commit fraud.[2]

This cause is now before the court on three motions: a motion to dismiss by Jackson and the Rushton law firm, a motion for summary judgment by Taylor and Standard Realty, and a motion for summary judgment by Union Bank and its directors.[3] For the reasons set forth below, the motion to dismiss filed by Jackson and the Rushton law firm will be granted; the motion for summary judgment by Taylor and Standard Realty will be granted to the extent plaintiffs seek relief against Standard Realty and denied in all other re-

spects; and the motion for summary judgment by Union Bank and its directors will be denied.

## I. BACKGROUND

### A.

During October 1984, Pike Properties, Inc., on behalf of plaintiffs—Bell Building Associates, Kachler, and McCall—and others entered into an office-complex purchase agreement with Standard Realty to purchase property and improvements at 207 Montgomery Street in Montgomery, Alabama. The purchase agreement required Standard Realty to deliver to plaintiffs fee simple title to the office complex. At the time the purchase agreement was signed, Taylor was president of Standard Realty.

Standard Realty had owned the office complex since 1967. Between 1978 and 1984, Taylor and Standard Realty made renovations to the office complex valued at more than $450,000, including the removal and replacement of insulation. Taylor also remodeled the offices of Standard Roofing, a company of which he was president; Standard Roofing was a tenant on the 12th floor of the office complex.

The purchase agreement required plaintiffs to contact Union Bank, where Taylor was chair of the board of directors, to discuss a loan to finance the purchase of the office complex. Plaintiffs' obligation to perform under the purchase agreement was subject to their obtaining a loan in the principal amount of $1,600,000 at an interest rate not to exceed 11% per year.

The transaction did not occur as envisioned in the purchase agreement. Rather, as evidenced by the documents actually executed at the closing in December 1984, the following transaction occurred. With a loan from Union Bank in the amount of $1,700,000, the Lower Commerce Street Historical Preser-

1. It appears that plaintiffs have sued Taylor for his actions as president of Standard Realty and not for his actions as a director of Union Bank.

2. "Complaint," as used throughout this order, refers to plaintiffs' second amended complaint filed on August 18, 1993.

3. Taylor and Standard Realty filed a motion to dismiss or, in the alternative, for summary judgment. Because defendants have presented and the court has considered matters outside the pleadings, their motion is treated as a motion for summary judgment. *See Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982).

vation Authority purchased a fee simple interest in the office complex from Standard Realty. The Authority issued a revenue note to reflect its indebtedness to Union Bank and granted Union Bank a mortgage and indenture in the office complex as security. The Authority then granted a leasehold interest in the office complex to Bell Building Associates; in exchange, the Bell Building Associates partnership, including Kachler and McCall, signed a guaranty agreement under which they guaranteed the payment of the Authority's note to Union Bank. Under the lease agreement, Bell Building Associates was to make rental payments directly to Union Bank. The lease agreement also provided that, in the event of a default, Union Bank could accelerate the indebtedness due under the lease agreement.

Plaintiffs assert that, although the plain language of the closing documents accurately reflects the transaction as it occurred, they were misled by Taylor, Standard Realty, Union Bank, and the bank's directors into believing that they were in effect acquiring a fee simple interest in the office complex. As such, Kachler and McCall believed their liability on the note upon default would be limited to the amount due after the proceeds of the sale of the office complex were credited to the note. Indeed, plaintiffs listed the office complex as a fee simple interest on their accounts until December 23, 1992. Plaintiffs further assert that these defendants "concocted" the transaction so that Union Bank could take advantage of certain historical preservation tax benefits available because of the Authority's participation.

Plaintiffs further allege that these defendants engaged in this transaction in order to "unload" the asbestos-laden office complex. Plaintiffs contend that, because of the remodeling Taylor and Standard Realty had done on the office complex prior to 1984 and because some asbestos had been removed from the 12th floor, where Taylor had his offices, Taylor and Standard Realty were aware of the presence of asbestos. Plaintiffs discovered the presence of asbestos in May 1992 when a tenant prematurely vacated the office complex, citing "dangerous asbestos" as the reason for its departure.

Plaintiffs further allege that their attorneys, Jackson and the Rushton law firm, violated a duty to act with reasonable care by advising them to engage in the office complex transaction and by not fully explaining the legal effect of the documents. Plaintiffs also assert that Jackson and the law firm violated a duty of loyalty because Jackson incorporated the Authority in 1979 and did not disclose this prior representation to them.

### B.

The above events spawned three pieces of litigation:

*The Alabama Litigation: Union Bank & Trust Co. v. Bell Building Associates, C.A. No. 92–T–484–N (M.D.Ala.).* In 1989, Bell Building Associates assigned the lease to Bell Building Group. Ltd., Inc. and took back a conditional leasehold mortgage. Bell Building Associates remained obligated on the lease after the assignment. In 1991, Bell Building Group failed to make payments under the lease. In March 1992, Union Bank notified the Authority, Bell Building Group, and Bell Building Associates and its general partners of the default on the note and accelerated the indebtedness. In April 1992, Union Bank filed a lawsuit in this Alabama federal court against Bell Building Associates and the guarantors, Kachler and McCall, seeking payment of the note pursuant to the guaranty agreement; this lawsuit has come to be known as the "Alabama litigation." Bell Building Associates, Kachler, and McCall—as the defendants in the Alabama litigation—counterclaimed alleging fraud in the concealment of the presence of asbestos in the office complex.

*The Bankruptcy Litigation: In re 207 Montgomery Street, Inc., No. 92–2822–APG (Bankr.M.D.Ala.).* In May 1992, Kachler and McCall formed 207 Montgomery Street, Inc. After Bell Building Associates foreclosed the leasehold mortgage of the Bell Building Group, the 207 Montgomery Street company acquired the Bell Building Group's interest in the lease. In July 1992, the company filed for protection under Chapter 11 of the Bankruptcy Code. During the bankruptcy proceedings, the company continued to operate and manage the office complex as a debtor-in-possession. Although Union Bank contended in these proceedings that the 207

Montgomery Street company was formed solely to shield Bell Building Associates, Kachler, and McCall, the bankruptcy court found that the bankruptcy petition was not filed in bad faith to abuse the bankruptcy process.

*The Texas Litigation: Kachler v. Taylor, C.A. No. 93–T–847–N (M.D.Ala.).* As stated earlier, in 1993, the current plaintiffs—Bell Building Associates, Kachler, and McCall—filed a lawsuit in state court in Texas. This lawsuit was removed to the United States District Court for the Southern District of Texas, was then transferred to the United States District Court for the Middle District of Alabama, and is the lawsuit now before this court. Plaintiffs amended their complaint to conform to Alabama law, but the parties and the factual allegations remain almost identical. As stated earlier, plaintiffs charged Taylor, Standard Realty, Union Bank, and the bank's directors with fraud; Standard Realty with breach of the purchase agreement; Jackson and the Rushton law firm with negligence, breach of fiduciary duty, and breach of contract; and all defendants with civil conspiracy to commit fraud. Because this action began in the courts of Texas, the bankruptcy court referred to it as the "Texas litigation." This court also continues to refer to it as the Texas litigation in order to distinguish it from the other litigation.

#### C.

The bankruptcy court confirmed the 207 Montgomery Street company's reorganization plan in April 1993. Union Bank, as a creditor of the debtor, was involved in the bankruptcy proceedings and objected to the reorganization plan. Kachler and McCall, as guarantors, were also involved in the proceedings and were an integral part of the reorganization plan. Under the plan, the 207 Montgomery Street company—the debtor—was to cure its default under the lease agreement, the indebtedness was to be decelerated, and the lease agreement was to be reinstated. Guarantors Kachler and McCall bound themselves to contribute sufficient funds to the debtor to enable it to cure any default and to ensure that it meets its monthly rent obligations under the lease agreement on a continuing basis. The plan also provided that Union Bank was to be compensated for any actual pecuniary loss as a result of the default under the lease agreement and to be compensated for any damages incurred as a result of its reasonable reliance on its acceleration rights. In May 1993, the 207 Montgomery Street company cured all defaults under the lease agreement and paid Union Bank the additional monies provided by the reorganization plan and confirmation order.

Union Bank disagreed with guarantors Kachler and McCall as to the effect of the reorganization plan on the Alabama litigation. In May 1993, this court granted the guarantors' motion to dismiss the Alabama litigation, finding Union Bank's claims to be barred, under the doctrines of res judicata and collateral estoppel, by the bankruptcy court's order confirming the reorganization plan. *Union Bank & Trust Co. v. Bell Building Associates,* C.A. No. 92–T–484–N, 1994 WL 276247 (M.D.Ala. May 28, 1993). In so finding, this court relied on language in the bankruptcy court's order expressly precluding the parties from continuing with the Alabama litigation. The bankruptcy court wrote that, "Upon assumption of the Lease Agreement (including a cure of all defaults) Union Bank shall be precluded from asserting against the defendants in the Alabama Litigation, or their respective properties, assets or constituent partners, any claim based upon any event of default that arose prior to the Consummation Date (as defined in the Plan) and that has been cured pursuant to the Plan," and that, "The Defendants in the Alabama Litigation similarly shall be precluded from asserting any counter-claim in the Alabama Litigation." *In re 207 Montgomery Street, Inc.,* No. 92–2822–APG, 1993 WL 669271 (Bankr.M.D.Ala. April 23, 1993), at 10–11. Union Bank had not appealed from the bankruptcy court's order confirming the reorganization plan.

The bankruptcy court's order also spoke to the Texas litigation. The court wrote: "Nothing contained herein shall prevent Union Bank from asserting any defense in the Texas litigation, other than a defense based upon a default that has been cured pursuant to the Plan, or shall prevent Union Bank from asserting any claim based upon any event of default arising after the Consumma-

tion Date." *In re 207 Montgomery Street, Inc.,* No. 92–2822–APG (Bankr.M.D.Ala. April 26, 1993), at 11. The parties dispute the preclusive effect of the bankruptcy court's reference to the Texas litigation on the instant case.

## II. MOTION TO DISMISS BY JACKSON AND THE RUSHTON LAW FIRM

Plaintiffs raise four claims against Jackson and the Rushton law firm: count VII charges negligent execution of professional duty; count VIII charges breach of fiduciary duty; count IX charges breach of contract; and count X charges conspiracy to defraud. Jackson and the Rushton law firm seek to dismiss all four counts against them on the grounds that these actions are time-barred by the Alabama Legal Services Liability Act, 1975 Ala.Code. §§ 6–5–570 through 581.[4]

On a motion to dismiss a complaint under Rule 12(b) of the Federal Rules of Civil Procedure, the court examines the allegations in the complaint to determine whether the plaintiff has adequately stated a claim for relief. A motion to dismiss may not be granted unless it appears beyond a doubt that, taking the allegations of the complaint in the light most favorable to the plaintiff, *Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989), " 'no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). *Accord Luckey v. Harris,* 860 F.2d 1012, 1016 (11th Cir.1988), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990). Jackson and the Rushton law firm argue that they served as only bond counsel in connection with the office complex transaction and did not even have an attorney-client relationship with plaintiffs. In considering this motion to dismiss, however, the court will accept as true plaintiffs' factual assertion that Jackson and the Rush-

ton law firm represented them in the transaction at issue. The court will also accept as true plaintiffs' claim that Jackson and the law firm misled them into believing they were acquiring a fee simple interest in the office complex.

■ The Alabama Legal Services Liability Act defines the statute of limitations for legal service liability actions. Subsection (a) to § 6–5–574 of the 1975 Ala.Code provides:

"All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date."

In *Michael v. Beasley,* 583 So.2d 245 (Ala. 1991), the Alabama Supreme Court held that the time limits in the Legal Services Liability Act "are to be measured from the date of the accrual of a cause of action and not," as the plain language of the Act would suggest, "from the date of the occurrence of the act or omission." *Id.* at 252. *See also Brewer v. Davis,* 593 So.2d 67, 68 (Ala.1992). The Court also held that the one-year savings provision in the Act should not be measured from August 1, 1987, as stated in the act, but from the effective date of the Act which was April 12, 1988. Thus, "a cause of action that accrued before April 12, 1988, shall not in any event be barred until the expiration of one year from that date." *Michael,* 583 So.2d at 250.[5]

---

**4.** Jackson and the Rushton law firm assert several other grounds for their motion dismiss. Because the court concludes that plaintiffs' action is time-barred, the court need not address these other grounds.

**5.** The Alabama Supreme Court has also made clear that the Act applies retroactively, such that the "statute of limitations in effect at the time the suit is filed, as opposed to the one in effect at the time of the accrual of the cause of action, applies." *Michael,* 583 So.2d at 251. Thus, there is no question as to whether the time limits set

To summarize, a "cause of action against a legal service provider must be commenced within whichever of the following limitations periods would provide the longest time in which to bring an action: (1) within two years after the cause of action accrued; (2) if the cause of action could not reasonably be discovered within two years, then within six months from the date of discovery of the cause of action or the date of the discovery of facts that would reasonably lead to discovery, provided that in no event can the action be commenced more than four years after the cause of action accrued; or (3) if the cause of action accrued before the effective date, then within one year after the effective date of April 12, 1988." *Michael,* 583 So.2d at 252.

Before determining whether plaintiffs' claims against Jackson and the Rushton law firm are time-barred, the court must decide when plaintiffs' cause of action accrued. A cause of action accrues "when a plaintiff suffers an injury that entitles him to maintain an action." *Malb's Associates, Inc. v. Phillips,* 589 So.2d 164, 165 (Ala.1991). The Alabama Supreme Court has acknowledged that certain acts do not cause injury immediately but only upon a "subsequent development" of the defendant's act. *Michael,* 583 So.2d at 251 (quoting *Cofield v. Smith,* 495 So.2d 61, 62 (Ala.1986)). For purposes of the Legal Services Liability Act's time limits, however, the Court has also made clear that, even though a "plaintiff's damages may have been compounded subsequently" by further developments, a cause of action accrues when "the plaintiff *would have first suffered a legal injury* for which he would have been entitled to commence an action for damages against the defendants." *Id.* (emphasis added). Thus, the question for the court is "when did [the plaintiffs] suffer a legal injury as a result of [their] lawyer's alleged malpractice?" *Welborn v. Shipman,* 608 So.2d 334, 336 (Ala. 1992).

Jackson and the Rushton law firm argue that plaintiffs' cause of action accrued in December 1984, at the time of the closing of the office complex transaction. Plaintiffs argue that they suffered no legal injury at the time of the closing; rather, they argue that their cause of action did not accrue until 1992 when Union Bank foreclosed their guaranty. Under the above law, however, if plaintiffs' factual assertions are true, they suffered legal injury in December 1984, when the office complex transaction was closed.

Plaintiffs assert throughout their pleadings that they were misled at the time of the transaction into their belief that they were acquiring a fee simple interest instead of a leasehold interest. It is at that time that plaintiffs contend that Jackson and the Rushton law firm breached their professional, contractual, and fiduciary duties to them. Indeed, the very execution of the guaranty was a product of plaintiffs' mistaken belief that they were acquiring a fee simple interest which would allow them to offset their liability on the note upon foreclosure by the amount of the proceeds from the sale of the office complex.[6] In essence, if plaintiffs' representations are true, they received less than what they had been promised. All of the documents executed at the closing in December 1984 accurately reflect that plaintiffs were receiving only a leasehold interest; plaintiffs therefore could have shown immediately that they did not receive what they had been promised. Thus, they would have sustained damages on that date, namely, the difference in value between a fee simple interest and a leasehold interest. As of that date, plaintiffs also could have sought rescission of the guaranty, which they agreed to in reliance on the "false promise" of a fee simple interest. It was then that they "first suffered a legal injury for which [they] would have been entitled to commence an action for damages against the defendants." *Michael,* 583 So.2d at 251 (quoting *Cofield v. Smith,* 495 So.2d 61, 62 (Ala.1986)).

The Alabama Supreme Court has addressed a substantially similar situation in *Ladner v. Inge,* 603 So.2d 1012 (Ala.1992). In that case, Ladner sued her attorney for legal malpractice because he failed to advise her to obtain mortgages to secure payment of notes obtained in the sale of real estate. In affirming the trial court's grant of sum-

---

forth in the Legal Services Liability Act apply to this case filed in 1993, regardless of when the cause of action is said to have accrued.

**6.** *See* Second Amended Complaint, at ¶ 23.

mary judgment in favor of the attorney, the Supreme Court held that the cause of action accrued when Ladner accepted the unsecured notes in exchange for warranty deeds, "because she was committed to receive unsecured promissory notes, which are less valuable than promissory notes secured by mortgages." *Id.* at 1015. "In addition to having no security interest and having her claims vulnerable to the priority enjoyed by holders of other claims," the court continued, "Ladner could not sell or assign the unsecured promissory notes in the same manner as she could have sold or assigned a note secured by a mortgage; nor could she have transferred it for a comparable value." *Id.* There, as here, the cause of action accrued at the time the transaction was closed—when the plaintiff received less than she would have if well-counselled by her attorney—and not at some later point upon actual default or foreclosure.

In the instant case, although the foreclosure of plaintiffs' guaranty accelerated their liability, plaintiffs incurred this obligation in 1984 because they believed they were acquiring a fee simple interest; they incurred a loss, if their assertions are true, at the moment they acquired only a leasehold interest. Thus, plaintiffs' contentions that they did not suffer damages until 1992 must be rejected. The fact that the foreclosure may have resulted in additional damages does not alter the conclusion that the cause of action first accrued in 1984 when plaintiffs—as in *Ladner*—acquired something of reduced value allegedly because of counsel's actions or inactions.

The court's analysis is consistent with other holdings of the Alabama Supreme Court. In *Pearce v. Schrimsher*, 583 So.2d 253 (Ala. 1991), a plaintiff brought an action against an attorney who provided him an erroneous title opinion; the plaintiff had relied to his detriment on the erroneous opinion in closing a real estate transaction. The Alabama Supreme Court held that the plaintiff's action was time-barred under § 6–5–574 because the cause of action accrued on the date that the transaction was closed. *Id.* at 254. In so doing, the Court affirmed the trial court's dismissal of plaintiff's complaint against the

attorney. In *Malb's Associates, Inc. v. Phillips*, 589 So.2d 164 (Ala.1991), a plaintiff alleged in 1990 that attorneys who prepared certain legal documents in 1984 regarding the franchise of a restaurant committed legal malpractice. The Alabama Supreme Court affirmed the trial court's grant of summary judgment in favor of the attorneys because the cause of action accrued in 1984 "when the defendants were allegedly negligent in providing legal services." *Id.* at 165. And in *Leighton Ave. Office Plaza, Ltd. v. Campbell*, 584 So.2d 1340 (Ala.1991), an attorney was sued for negligence, breach of fiduciary duty, breach of contract, and fraud in connection with his handling of the sale of an office building. The Alabama Supreme Court wrote that the plaintiffs' cause of action accrued on the date the building was sold "for it was on that date that they first incurred damages upon which they could base legal claims." *Id.* at 1343. Relying on the above case law, this court now holds that Bell Building Associates, Kachler, and McCall's cause of action accrued when they guaranteed the Authority's note under their mistaken belief that they were acquiring a fee simple interest.

■ The court must further conclude that, because plaintiffs' cause of action accrued in December 1984, the statute of limitations for this action has run under all possible interpretations of § 6–5–574(a) of the Legal Services Liability Act. First, plaintiffs filed this lawsuit on February 5, 1993, plainly more than two years after the cause of action accrued. Second, even if there is a question of fact regarding when plaintiffs discovered that they had only acquired a leasehold interest—such that the statute of limitations would be tolled by their lack of knowledge— § 6–5–574(a), as interpreted by the Alabama Supreme Court, provides that in no event can an action be filed more than four years after the date the cause of action accrued. *Michael*, 583 So.2d at 252.[7] This lawsuit was filed well after the four-year period had elapsed. Third, because the cause of action accrued in December 1984, prior to the effec-

---

**7.** Indeed, as the court holds below, there is a genuine issue as to when plaintiffs discovered the alleged fraud.

tive date of the Legal Services Liability Act on April 12, 1988, plaintiffs' action would have been timely only if filed before April 12, 1989. *Id.; Malb's Associates*, 589 So.2d at 165; *Pearce*, 583 So.2d at 254 Plaintiffs, however, did not file this action until almost four years later.

■ As to the conspiracy to defraud claim—count X—plaintiffs suggest that this claim would not be barred under Alabama's "savings provision" for undiscovered fraud claims. This statute provides:

> "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting fraud, after which he must have two years within which to prosecute his action."

1975 Ala.Code § 6-2-3. Assuming again that the plaintiffs could show that it was in 1992 that they discovered that they did not acquire a fee simple interest, the Legal Services Liability Act precludes their reliance on § 6-2-3. The Act covers all actions against legal service providers. 1975 Ala.Code § 6-5-573.[8] Although subsection (b) to § 6-5-574 of the Act provides that legal services liability actions are subject to the tolling provisions of § 6-2-3, the subsection further states that "no action shall be commenced more than four years after the act, omission, or failure complained of." [9] Consistent with this reading of the concurrent operation of §§ 6-2-3 and 6-5-574(b), the Alabama Supreme Court in *Leighton* stated that, "a legal malpractice action based on allegations of fraud must be commenced within two years after the discovery by the aggrieved party of the fact constituting the fraud; provided, however, that no action may be commenced more than four years after the act or acts constituting the fraud." 584 So.2d at 1344. Thus, plaintiffs' fraud claim had to be filed

before December 17, 1988, and, because it was not, it is barred. Moreover, this same conclusion would be reached even if the phrase "act, omission, or failure" in § 6-5-574(b) were construed more broadly, as in *Michael*, to mean the date the cause of action accrued; as shown above, plaintiffs' cause of action accrued on the date that the transaction was closed in 1984.

The court concludes, therefore, that all of plaintiffs' claims against Jackson and the Rushton law firm—counts VII through X—are time-barred under § 6-5-574 of the Legal Services Liability Act, even if plaintiffs could show that the statute of limitations should be tolled because they did not have knowledge of their cause of action until 1992. In reaching this conclusion, the court has accepted plaintiffs' factual allegations as true and assumed that they would otherwise have actionable claims against their attorney and his firm. Jackson and the Rushton law firm's motion to dismiss will be granted.

### III. MOTIONS FOR SUMMARY JUDGMENT BY TAYLOR, STANDARD REALTY, UNION BANK, AND THE BANK'S DIRECTORS

Plaintiffs raise claims against the following remaining defendants: Taylor, Standard Realty, Union Bank and the bank's directors. Count I charges all remaining defendants with fraudulent suppression of the presence of asbestos in the office complex; counts II, III, and IV charge them with willful, reckless, and mistaken misrepresentation of the terms of the office complex transaction; count V—more in the nature of a remedy for counts II, III, and IV than an independent cause of action—seeks rescission of the guaranty; count VI charges Standard Realty alone with breach of the purchase contract; and count X charges all remaining defen-

---

8. Section 6-5-573 provides:

"There shall be only one form and cause of action against legal service providers in courts of the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."

9. Subsection (b) to § 6-5-574, provides:

"Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitations

for the commencement of actions, namely, Sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30, and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his or her eighth birthday to commence such action."

dants with civil conspiracy to defraud. Separate motions for summary judgment on all counts have been filed by Taylor and Standard Realty and by Union Bank and its directors.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

### A. *Dissolution of Standard Realty*

■ Standard Realty asserts that it is entitled to summary judgment on all claims against it—counts I–VI and X—because it was dissolved as a corporation in 1985 and is not a proper party to this lawsuit. Plaintiffs offer no counter-argument, and the court agrees with Standard Realty.

Standard Realty was dissolved in August 1985.[10] Under Alabama's corporate survival statute, 1975 Ala.Code § 10–2A–203, claims against a dissolved corporation may be raised only during a two-year "wind-up" period subsequent to dissolution; after the two-year period, the dissolved corporation lacks the capacity to be sued.[11] Because Standard Realty lacks the capacity to be sued, summary judgment is appropriate in its favor on all claims asserted against it. *See Hutson v.*

*Fulgham Indus., Inc.*, 869 F.2d 1457, 1460 (11th Cir.1989) ("The purpose of Alabama's survival statute is to provide a two year period in which to wind-up corporate affairs following dissolution of a corporation"); *Turner v. Wean United, Inc.*, 531 So.2d 827, 832 (Ala.1988) (summary judgment in favor of corporation dissolved in 1964 appropriately entered in lawsuit brought in 1982).

■ Furthermore, whether plaintiffs had knowledge of their causes of action during the two-year wind-up period is of no relevance. "The [corporate survival] statute acts as a limitation upon the capacity of the corporation to sue or be sued rather than as a statute of limitations." *Hutson*, 869 F.2d at 1460. The statute, therefore, is not subject to other provisions of Alabama law which toll statutes of limitations where a plaintiff has not discovered his or her cause of action. *See, e.g.*, 1975 Ala.Code § 6–2–3. Thus, "there is nothing to toll here, and the principle of fraudulent concealment has no application to a corporate survival statute." *Park Center Inc. v. Champion Intern. Corp.*, 804 F.Supp. 294, 301 (S.D.Ala.1992) (citations omitted). There are, therefore, no material questions of fact, and summary judgment should be entered in favor of Standard Realty on counts I–VI and X.[12]

### B. *Res Judicata and Collateral Estoppel*

In their motions, Taylor, Union Bank, and the bank's directors rely substantially on the defenses of res judicata and collateral estoppel and argue that the bankruptcy court's confirmation order and this court's order dismissing the Alabama litigation preclude plaintiffs' claims against them. Before turning to the merits of these defenses, the court must address a procedural issue raised by plaintiffs. Plaintiffs assert that res judicata and collateral estoppel are affirmative de-

---

**10.** *See* certified copy of articles of dissolution, attachment 2 to Standard Realty's motion.

**11.** Section 10–2A–203 provides:

"The dissolution of a corporation ... by the issuance of a certificate of dissolution ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such

dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution."

**12.** In count VI, plaintiffs asserted their breach-of-contract claim against only Standard Realty. The court, therefore, need not reach the question of whether plaintiffs' breach-of-contract would be time-barred under 1975 Ala.Code § 6–2–34(9) (six-year statute of limitations for an action on a simple contract).

fenses which must be raised by answer under Rule 8(c) of the Federal Rules of Civil Procedure. Plaintiffs contend that these defenses are waived because none of the defendants has, as yet, answered its complaint. Plaintiffs' procedural argument—without citation of any supporting case law—is rejected by the court.

■ Although Rule 8(c) includes res judicata and collateral estoppel on the list of affirmative defenses that must be pleaded specifically by answer, these defenses may be raised for the first time on a motion for summary judgment. In the absence of an answer, a party may raise a res judicata defense for the first time on a motion for summary judgment after introducing sufficient information into the record to permit the court to judge the sufficiency of the defense. *Jones v. Gann*, 703 F.2d 513, 515 (11th Cir.1983); *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982); *Howkins v. Caldwell*, 587 F.Supp. 98, 101–02 (N.D.Ga.1984), *aff'd*, 749 F.2d 731 (11th Cir. 1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985); *see also* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1277 (1990); 10A Wright & Miller, § 2735 (1983).

In this case, the record before the court includes the following: an order and opinion of the bankruptcy court holding that the 207 Montgomery Street company's interest in the office complex should be construed as a lease and not a mortgage; the company's amended and restated disclosure statement to the bankruptcy court; the bankruptcy court's confirmation order; Bell Building Associates, Kachler, and McCall's answer and counterclaim in the Alabama litigation; and this court's order dismissing the Alabama litigation. Plaintiffs have responded to the merits of the preclusion defenses and have not asserted that the evidence before the court is in any way insufficient to consider the preclusion defenses. Under these circumstances, the court finds that it has before it sufficient information to consider the res judicata and collateral estoppel defenses raised by Taylor, Union Bank, and the bank's directors.

■ In considering the preclusion defenses, the court must first determine whether to apply the laws of Alabama, as Taylor argues, or federal common law. In making his argument that this court must apply Alabama law in considering the preclusion defenses, Taylor points the court to *N.A.A.C.P. v. Hunt*, 891 F.2d 1555 (11th Cir.1990). In that case, the court considered the preclusive effect a federal district court should give to a previous decision by a federal district court. The court wrote that, "Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata." *Id.* at 1560.[13] The court in *Hunt* applied state principles of preclusion even though the prior judgment was by a federal court and decided federal questions of law. More recently in *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir.1992), the Eleventh Circuit Court of Appeals relied exclusively on *Hunt* in applying state law to a prior judgment by a federal court. If this court were also to rely on *Hunt* as urged by Taylor, it would indeed be compelled to apply Alabama law.

The court finds, however, that the rule in *Hunt* is inconsistent with other Eleventh Circuit case law. The *Hunt* court relied on *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563 (11th Cir.1987), for the general proposition that a federal court must apply the law of the state in which it sits with respect to res judicata. *McDonald*'s reach—if read in conjunction with other Eleventh Circuit case law before and after *Hunt*—is not that broad. In holding that a federal court must apply the res judicata principles of the state where it sits, the *McDonald* court was considering the preclusive effect a federal court must give to a prior *state court* judgment. *Id.* at 1565.[14] The *Hunt* court, however, proceeded to apply this rule in determining the preclusive effect of a previous *federal court* judgment.

In other decisions, the Eleventh Circuit has made clear that in determining whether to apply state or federal principles of preclu-

---

13. Although the *Hunt* court held that Alabama law was applicable, it proceeded in part to rely on federal principles of res judicata.

14. The court noted that "Title 28 U.S.C. § 1738 requires a federal court to give the same preclusive effect to a state court judgment as the state court would give." *McDonald*, 821 F.2d at 1565.

sion, the determinative factor is whether the prior judgment was issued by a state or a federal court. Whether the court issuing the prior judgment decided questions of state or federal law is irrelevant. In *Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.1986), a pre-*Hunt* decision, the court wrote: "Although both actions were based on state law ... we apply federal common law because we are determining the preclusive effect of a federal judgment." In *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990), a post-*Hunt* decision, the court wrote that "a federal court must apply federal law to determine the preclusive effect of a prior federal court decision." Indeed, in *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1293 n. 2 (11th Cir.1989), the court wrote: "Although there are still some cases that say that when the federal court is exercising its diversity jurisdiction, the law of the state where it sits determines the preclusive effect of its judgment ... *this view is erroneous*." (Emphasis added). *Gibbs v. Air Canada*, 810 F.2d 1529, 1535 (11th Cir.1987) ("Federal law governs the res judicata effect of a prior judgment in a diversity action in a subsequent diversity case"); *Heller v. Plave*, 743 F.Supp. 1553, 1566 n. 17 (S.D.Fla.1990) ("The federal common law of res judicata determines the preclusive effect of a federal court judgment on a subsequent federal court case"); *see also Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir.1989).

Although there is some conflict within this circuit, the court concludes that the better reading of Eleventh Circuit precedent is that a federal court applies federal preclusion principles when considering the effect of a prior federal court judgment. In reaching this conclusion, the court is guided by the following language quoted with approval by the Eleventh Circuit:

"One of the strongest policies a court can have is that of determining the scope of its own judgments. It would be destructive to the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity."

*Empire Fire*, 880 F.2d at 1293 n. 2 (quoting *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962)). In this case, because the defendants raise the defenses of res judicata and collateral estoppel based on a prior judgment by the United States Bankruptcy Court for the Middle District of Alabama, the court will apply the federal common law relating to those defenses.[15]

█ Res judicata is "the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Under federal principles, res judicata applies if four elements are present: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties or their privies were identical in both suits; and (4) the prior and present causes of action are the same. *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir.1992); *Thomas*, 880 F.2d at 1240; *Hart*, 787 F.2d at 1470. There is little dispute as to the first and third factors. Indeed, this court has already concluded in its order dismissing the Alabama litigation that these factors are met. *Union Bank & Trust Co. v. Bell Building Assoc.*, C.A. No. 92–T–484–N (M.D.Ala. May 28, 1993) (memorandum opinion), at 6–7, 9–10.[16] It also appears to the court, at least preliminarily, that the bankruptcy court order and the instant litigation could be said to satisfy the fourth factor—same cause of action— because both "arise out of the same transaction or series of transactions." *Entin*, 951 F.2d at 315.

---

**15.** A bankruptcy court's confirmation order is treated the same as a district court's final judgment. *In Re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). In that case, the court applied federal principles in determining the preclusive effect of the bankruptcy court's order.

**16.** Although the court did not consider whether Taylor can be considered the "same party," because he was not a plaintiff in the Alabama litigation, the court did find that Union Bank was the "same party" for purposes of res judicata. The court need not finally decide whether Taylor was in privity with Union Bank because it holds below that res judicata is not available to either Taylor or Union Bank for other reasons.

■ The court finds, however, that the second factor—a final decision on the merits—has not been satisfied. Before turning to this remaining factor, the court must briefly review the prior decisions. The bankruptcy court's references to the pending Alabama and Texas litigation complicate the court's application of res judicata and make this case somewhat atypical. The bankruptcy court was aware of the pendency of both the Alabama and Texas litigation. The court viewed the Alabama litigation as principally a *default* proceeding and wrote that:

> "The Debtor has defaulted under its obligations to Union Bank.... Union Bank has asserted claims arising from the Debtor's pre-petition *default* under the Lease Agreement in that certain litigation currently pending before the United States District Court for the Middle District of Alabama ... (the 'Alabama Litigation'). The Debtor and the Guarantors (as defined in the Plan) have asserted certain counterclaims in the Alabama Litigation."

*In re 207 Montgomery Street, Inc.*, No. 92–2822–APG (Bankr.M.D.Ala. Nov. 16, 1992), at 3 (emphasis added). In contrast, the bankruptcy court viewed the Texas litigation as asserting tort and contract claims in the execution of a lease and wrote that, "In addition, the Guarantors have asserted claims against Union Bank arising out of the *execution* of the Lease Agreement in that certain litigation currently pending before the District Court of Harris County, Texas ... (the 'Texas Litigation')." *Id.* (emphasis added). In the Alabama litigation, Bell Building Associates, Kachler and McCall asserted counterclaims of fraud regarding the presence of asbestos, but did not assert counterclaims of fraud regarding the type of interest they acquired in the office complex. In the Texas litigation—the lawsuit now before this court—Bell Building Associates, Kachler, and McCall asserted fraud claims regarding both the presence of asbestos and the type of interest they acquired in the office complex.

In approving the reorganization plan, the bankruptcy court issued the following order which forms the basis for the parties' dispute over the applicability of the res judicata defense:

> "Upon assumption of the Lease Agreement (including a cure of all defaults) Union Bank shall be precluded from asserting against the defendants in the Alabama Litigation [Bell Building Associates, Kachler, and McCall] ... any claim based upon any event of default that arose prior to the Consummation Date (as defined in the Plan) and that has been cured pursuant to the Plan. [Bell Building Associates, Kachler, and McCall] similarly shall be precluded from asserting any counter-claim in the Alabama Litigation. Nothing contained herein shall prevent Union Bank from asserting any defense in the Texas Litigation, other than a defense based upon a default that has been cured pursuant to the Plan."

*In re 207 Montgomery Street, Inc.*, No. 92–2822–APG (Bankr.M.D.Ala. Nov. 16, 1992), at 10–11. Relying on this order, this court later granted Bell Building Associates, Kachler, and McCall's motion to dismiss Union Bank's claims in the Alabama litigation after finding Union Bank's claims to be barred by res judicata and collateral estoppel. In considering whether there was a final judgment on the merits, the court wrote that the "[bankruptcy] order expressly precluded Union Bank from pursuing its claims under the guaranty and was final and appealable." *Union Bank & Trust Co. v. Bell Building Assoc.*, C.A. No. 92–T–484–N (M.D.Ala. May 28, 1993) (memorandum opinion), at 8.

■ Taylor, Union Bank, and the bank's directors now argue to the court that res judicata applies to the instant claims against them because the bankruptcy court ordered that Bell Building Associates, Kachler, and McCall were precluded from asserting any counter-claims against Union Bank in the Alabama litigation.[17] Essentially, Taylor,

---

17. To the extent Taylor, Union Bank, and the bank's directors are heard to argue that the term "Alabama Litigation," as used by the bankruptcy court, refers to this case, the court must reject that argument. As this court has already explained, the bankruptcy court's reference to the "Alabama Litigation" is to Union Bank's claim of default on the lease agreement; the case now before the court is the one styled the "Texas Litigation" by the bankruptcy court, notwithstanding the fact that the case has been transferred to this federal court sitting in Alabama.

Union Bank, and the bank's directors argue that the bankruptcy court intended to "wrap up" all litigation between Union Bank and Bell Building Associates, Kachler, and McCall. Had the bankruptcy court made no reference to the Texas litigation, this court would be inclined to agree that all claims by Bell Building Associates, Kachler, and McCall are barred by res judicata.[18]

Instead, the bankruptcy court drew a distinction between the Alabama litigation and the Texas litigation, describing the Alabama litigation as involving plaintiffs' *default* on the lease, and describing the Texas litigation as involving the *execution* of the lease, with the parties to be able to continue with the latter: "Nothing contained herein shall prevent Union Bank from asserting any defense in the Texas Litigation, other than a defense based upon a default that has been cured pursuant to the Plan." *In re 207 Montgomery Street, Inc.,* No. 92–2822–APG (Bankr. M.D.Ala. Nov. 16, 1992), at 11. The bankruptcy court therefore expressly precluded all claims and counterclaims in the Alabama litigation, but expressly acknowledged the continuing existence of the Texas litigation; that is, because the bankruptcy court expressly permitted Union Bank to raise "any defense" in the Texas litigation, it necessarily envisioned that the Texas litigation was independent and would be ongoing. The bankruptcy court intended to preclude Union Bank from pursuing its foreclosure action in the Alabama litigation because the default had been cured pursuant to the confirmation order; the bankruptcy court did not, however, intend to make a final decision on the merits regarding the claims raised in the Texas litigation. The reason for this distinction is reasonable: the 207 Montgomery Street company, the debtor, had listed as part of its assets the unliquidated tort and contracts claim it had against the defendants in the Texas litigation; these unliquidated claims involved matters independent of the default issue before the bankruptcy court. Consistent with this reasoning and approach, the bankruptcy court held that the lease as written should be treated as a lease and not

as a "disguised security arrangement," *In re 207 Montgomery Street, Inc.,* No. 92–2822–APG (Bankr.M.D.Ala. Dec. 23, 1992); the court did not, however, consider whether there was fraud in the execution of the lease. This court must conclude, therefore, that the bankruptcy court intended to preclude those issues involving the default on the lease—the Alabama litigation—but not those issues involving the execution of the lease—the Texas litigation. The second required factor for this court's application of res judicata—final decision on the merits—is therefore not satisfied.

Although a bankruptcy court's order confirming a plan of reorganization is said to have the effect of a district court decision, "[w]hether it has the effect of a final judgment on a particular claim ... depends on whether and how the claim was resolved in the plan." *In re Dahlgren Intern., Inc.,* 147 B.R. 393, 397 (N.D.Tex.1992). In *Dahlgren,* the district court found that a bankruptcy court's confirmation order was not res judicata to a subsequent action where that order "explicitly defers" a decision. *Id.* at 398. The court found that, because the claim was deferred, there had been no final decision on the merits.

This court's prior conclusion that the Alabama litigation was precluded by res judicata is fully consistent with its holding today. With respect to Union Bank's foreclosure claims in the Alabama litigation, there was a final decision on the merits by the bankruptcy court, as evidenced by that court's express statement that the Alabama litigation was to be precluded. Here, by contrast, the bankruptcy court intended no decision on the merits of plaintiffs Bell Building Associates, Kachler, and McCall's claims regarding the execution of the lease. While the bankruptcy court precluded plaintiffs' asbestos counterclaim in the Alabama litigation, it did so in order to dispose of Union Bank's foreclosure action. The bankruptcy court was aware that the asbestos claim had also been raised in the Texas litigation which it envisioned would continue. Because this court's deci-

---

18. In their motions for summary judgment, Taylor, Union Bank, and the bank's directors neglect to inform the court that the bankruptcy court specifically addressed the Texas litigation, and they quote only the portion of the bankruptcy court order discussing the Alabama litigation. The court is disturbed by this failure to present all the facts.

sion regarding the res judicata defense in the Alabama litigation was based on the bankruptcy court's order, its res judicata effect must be interpreted consistently with the bankruptcy court's order and extend no further.

In concluding that res judicata is not available to Taylor, Union Bank, and the bank's directors, the court is also guided by § 26 of the Restatement (Second) of Judgments. Section 26(1)(b) provides that res judicata is not available when the "court in the first action has expressly reserved the plaintiff's right to maintain the second action." [19] Thus, § 26(1)(b) provides an exception to the general rule that a plaintiff may not "split" claims—because all claims are merged into the first action—where the court in the first action allows such splitting. While the bankruptcy court did not state explicitly that plaintiffs could bring their claims in the Texas litigation, the fact that it explicitly precluded the Alabama litigation and explicitly permitted the defendants to raise defenses in the Texas litigation leads this court to the conclusion that the bankruptcy court "expressly" reserved plaintiffs' right to proceed with the Texas litigation. Comment b to § 26 indicates that "expressly" should be given a broad reading: "A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action ... expressed in the judgment itself or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action." Other federal courts have applied § 26(1)(b): *see, e.g., Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1441 n. 4 (11th Cir. 1983); *In the Matter of Energy Cooperative, Inc.*, 814 F.2d 1226, 1233 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987); *United States v. Outboard Marine Corp.*, 789 F.2d 497, 508 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct.

457, 93 L.Ed.2d 403 (1986). Because this court applies the federal common law of res judicata, § 26(1)(b) provides a separate and independent basis for holding that the instant action is not precluded under the doctrine of res judicata.[20]

■ Taylor, Union Bank, and the bank's directors also assert that count I of the complaint—the asbestos claim—is barred under the doctrine of collateral estoppel. In order to invoke collateral estoppel, four prerequisites must be met: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 n. 6 (11th Cir.1990); *Hart*, 787 F.2d at 1473.

■ In this case, neither the bankruptcy court nor this court in its order dismissing the Alabama litigation decided any question of law or fact with regard to plaintiffs' claim of fraudulent concealment of the presence of asbestos in the office complex. The bankruptcy court precluded plaintiffs from raising this as a counterclaim in the Alabama litigation—in order to dispose of Union Bank's foreclosure action—and this court dismissed all claims in the Alabama litigation on that basis, but neither court held that there was no fraudulent concealment.[21] Neither court, for example, found that asbestos was not present in the building in 1984 as a factual matter or that it was not fraudulently concealed as a matter of law. If such findings had been made, Taylor, Union Bank, and the bank's directors might be able properly to

---

19. Section 26 provides:
 "(1) When any of the following circumstances exists, the general rule of § 24 [res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: ...
 (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action."

20. Taylor, Union Bank, and the bank's directors' argument that Alabama courts have not adopted the Restatement of Judgments is therefore inapposite.

21. Mere dismissal, without actual decisions of law or fact, does not necessarily satisfy the requirements of collateral estoppel. *See Hart*, 787 F.2d at 1474.

assert collateral estoppel as a defense. While the bankruptcy court precluded plaintiffs from raising the asbestos claim in the Alabama litigation, it was aware that such a claim was pending in the Texas litigation which it permitted to go forward. Under these circumstances, where "[n]o issue of law or fact relating to [fraudulent concealment of asbestos] was actually decided," plaintiffs are not collaterally estopped from raising their claim. *Hart*, 787 F.2d at 1474.

### C. *Ratification and Estoppel*

■ Union Bank and its directors assert that, under the doctrines of ratification and equitable estoppel, plaintiffs may not pursue an action against them challenging the legality of the lease because plaintiffs affirmed the lease as part of the reorganization plan. The doctrine of equitable estoppel "comes into play where a party takes a position in one instance inconsistent with that party's position in another instance, to another's prejudice." *Williams v. FNBC Acceptance Corp.*, 419 So.2d 1363, 1367 (Ala.1982). Estoppel operates "to prevent an otherwise unjust result." *Id.* Under the doctrine of ratification, "A party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it." *Wilson v. Southern Medical Ass'n*, 547 So.2d 510, 514 (Ala.1989) (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297, 305 (Ala.1986)).

■ The court cannot agree with Union Bank and its directors. In their disclosure statement and through other proceedings, plaintiffs made the bankruptcy court aware of their "unliquidated" claims in the Texas litigation and their counterclaims in the Alabama litigation. The bankruptcy court acknowledged the existence of these other claims in its confirmation order. Plaintiffs, therefore, challenged the legality of the lease throughout the bankruptcy process and do not now adopt a new and inconsistent position.[22] Although plaintiffs agreed to cure the

default on the lease, they continued to press their claims of fraud and contract in the Texas litigation. As this court holds today, the bankruptcy court envisioned that the Texas litigation would continue. Under these circumstances, it cannot be said that plaintiffs have adopted inconsistent positions. Moreover, the equitable doctrines of ratification and estoppel are not applicable because Union Bank and its directors have suffered no prejudice. Under the terms of the reorganization plan, plaintiffs cured the default on the lease and resumed payments. The plan also compensated Union Bank for any actual pecuniary loss as a result of the default under the lease agreement and compensated Union Bank for any damages incurred as a result of its reasonable reliance on its acceleration rights. Thus, the "ratification" of the lease has not prejudiced Union Bank and its directors in the interim and plaintiffs Bell Building Associates, Kachler, and McCall will not now be estopped from challenging the legality of that lease.

### D. *Statute of Limitations on Fraud Claims*

Taylor, Union Bank, and the bank's directors assert that counts II, III, IV, V, and X—charges of fraud in the type of interest acquired—are time-barred under Alabama law. In Alabama, an action for fraud is subject to a two-year statute of limitations. 1975 Ala.Code § 6–2–38. The limitations period, however, is tolled until the plaintiff discovered or should have discovered the alleged fraud:

> "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute the action."

1975 Ala.Code § 6–2–3. The law in Alabama has long been that "[t]he question of when a party discovered or should have discovered fraud which would toll the statute of limita-

---

**22.** Courts have held that challenges following a bankruptcy court's confirmation order are estopped where the challenging party failed "to mention this potential claim either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution." *Oneida Motor Freight, Inc. v. United Jersey Bank*,

848 F.2d 414, 419 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). *See also In re Little*, 126 B.R. 861, 866–67 (Bankr.N.D.Miss.1991). Plaintiffs in this case clearly met their burden of pressing their claims before the bankruptcy court.

tions is for the jury." *Thompson v. National Health Ins. Co.,* 549 So.2d 12, 14 (Ala.1989) (quoting *Vandergrift v. Lagrone,* 477 So.2d 292, 295 (Ala.1985)). *See also Hicks v. Globe Life and Acc. Ins. Co.,* 584 So.2d 458, 463 (Ala.1991) (collecting cases). On a motion for summary judgment, a defendant must generally show actual knowledge to defeat a fraud claim: "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Hicks,* 584 So.2d at 463 (emphasis in original). *See also Baker v. Bennett,* 603 So.2d 928, 933 (Ala.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993).

 Taylor, Union Bank, and the bank's directors argue that plaintiffs can be said to have discovered the alleged fraud on the closing date in 1984 because all documents executed on that date accurately reflect that plaintiffs received a leasehold interest. It is true, as defendants argue, that fraud is discovered as a matter of law when one "receives documents" that put one on notice of the fraud. *Hickox v. Stover,* 551 So.2d 259, 262 (Ala.1989). Under the circumstances of this case, however, the court cannot conclude as a matter of law that plaintiffs discovered the fraud in 1984, or had actual knowledge of facts that would put a reasonable person on notice of fraud, simply because they had possession of the closing documents. The court reaches this conclusion even though, as plaintiffs concede, the closing documents reflected plaintiffs' acquisition of only a leasehold interest.

Although plaintiffs can be said to have had "actual knowledge" of the closing documents in 1984, they cannot be said to have had actual knowledge of facts that would put them on notice of the alleged fraud at that time. Rather, a reasonable jury could conclude that they did not have actual knowledge of the alleged fraud until 1992, within two years of when they filed the instant suit, when Union Bank foreclosed upon the guaranty. Plaintiffs' theory of fraud is that defendants induced them to enter the lease

agreement by representing that plaintiffs' rights would be equivalent to those of a fee simple owner. It is therefore insufficient that plaintiffs had actual knowledge of the closing documents because the fraudulent scheme they allege was that they were promised a fee simple interest and that they were in fact receiving a fee simple interest notwithstanding the documents executed at the closing. As the Alabama Supreme Court recognized in *Hicks,* to hold as a matter of law that a party actually knows of fraud simply because that party has received a written document "would be to nullify the saving provision of Ala.Code 1975, § 6–2–3." 584 So.2d at 463. In *Hicks,* the plaintiff claimed that she had been promised a major medical insurance policy, but actually received only a limited benefits policy. The trial court granted summary judgment in favor of the insurer because the plaintiff had been provided a copy of the insurance policy reflecting that she only received a limited benefits policy. The Alabama Supreme Court reversed the trial court and held that a jury could find that a reasonable plaintiff would not have discovered the misrepresentation until the time that the insurer refused to pay a claim. *Id.* at 464.

In this case, a jury could find that plaintiffs reasonably did not discover the alleged fraud—notwithstanding the closing documents—until Union Bank foreclosed. It is at that time that plaintiffs knew for certain that they could not offset their liability on the guaranty with the proceeds from the sale of the office complex. In addition to the affidavits of Kachler and McCall, there is evidence in the record to support plaintiffs' claim that defendants represented to them that the lease arrangement, with the Authority as fee simple owner, was nothing more than a financing tool necessary to take advantage of certain tax benefits. In a letter to the president of Pike Properties (which acted as the plaintiffs' agent) several weeks before the closing, the president of Union Bank wrote that he was "pleased to respond favorably to [their] request ... for a loan in the amount of $1,700,000.00 to be used *to purchase and renovate* the Bell Building." [23] In another

---

**23.** Exhibit I to Plaintiffs' Opposition to Taylor's Motion for Summary Judgment (emphasis added).

letter to the president of Pike Properties prior to the closing, a real estate appraiser made the following representation: "It should be noted that the title will be taken by the Lower Commerce Street Historical Preservation Authority, however this is necessary primarily as a financing tool and *the ultimate purchasers, receiving full benefits from the property and accepting full liabilities* will be Pike Properties, Inc." [24] Moreover, in letters to a senior vice president of Union Bank, plaintiffs made statements indicating to Union Bank that they were the fee simple owners of the office complex; these statements were not corrected by Union Bank. For example, in 1987, Stephen Moore wrote to Union Bank on behalf of Bell Building Associates that, "We are very pleased with the progress that has been made at the Bell Building since our purchase of the property just over two years ago." [25] In addition, plaintiffs listed the office complex as a purchase for accounting purposes until December 1992.

■ Although a jury may ultimately determine that plaintiffs " 'ought to or should have discovered' more than [two years] before this action was filed 'facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered,' " the court cannot now say as a matter of law that plaintiffs actually knew of the alleged fraud at the time of the closing in 1984. *McLaughlin v. Pannell Kerr Forster,* 504 So.2d 264, 267 (Ala.1987) (quoting *Gonzales v. U–J Chevrolet Co.,* 451 So.2d 244, 247 (Ala.1984)). Taylor, Union Bank, and the bank's directors are therefore not entitled to summary judgment on counts II, III, IV, V, and X.

■ The court has an additional and independent basis for denying summary judgment on these counts. It appears to the court that plaintiffs have not received responses to discovery requests made to Taylor, Union Bank, and the bank's directors in June 1993. "If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment ... summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir.1988) (citation omitted). Plaintiffs' discovery requests, in part, seek information regarding the execution of the lease. Because such information could be relevant to their opposition to summary judgment, this court cannot grant summary judgment on these counts.

### E. *Absence of Justifiable Reliance on Fraudulent Suppression of Asbestos*

Taylor argues that summary judgment is appropriate on count I—fraudulent suppression of asbestos—because plaintiffs did not "justifiably rely" on any of the defendants' silence. In count I, plaintiffs allege that Taylor, Union Bank, and the bank's directors were aware of the presence of asbestos, were aware of the costs associated with renovating asbestos-laden buildings, and had a duty to disclose the presence of asbestos but did not do so. Plaintiffs further allege that they relied on these defendants' silence in agreeing to "purchase" the building and that they have lost tenants because of the presence of asbestos.

In support of his argument, Taylor points the court to the case of *Osborne v. Weil,* 628 So.2d 436 (Ala.1993). In that case, the Alabama Supreme Court held that plaintiffs who brought claims of fraud in a commercial transaction "had no right to rely on oral representations made before they executed the contract prepared by their lawyer." *Id.* at 438. Relying on that holding, Taylor argues that plaintiffs are limited to the terms of the purchase agreement and may not base their fraud claims on either oral misrepresentations or suppression of material facts. The court, however, agrees with plaintiffs that *Osborne* has no relevance to the instant case because plaintiffs base their claim on

---

**24.** Exhibit J to Plaintiffs' Opposition to Taylor's Motion for Summary Judgment (emphasis added).

**25.** Exhibit K to Plaintiffs' Opposition to Taylor's Motion for Summary Judgment. *See also* Exhibit L ("we are still committed to owning and operating the building in such a manner as to ensure its long term profitability").

suppression of facts, not oral misrepresentation. *Osborne* speaks to the law of oral misrepresentations prior to the execution of a contract and has no relevance to plaintiffs' claim of suppression of material facts.[26]

■ The elements of a fraudulent suppression claim do not include justifiable reliance. In order to recover for fraudulent suppression, a plaintiff must show: "(1) a duty to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiffs to act; and (4) action by the plaintiff to his injury." *Norman v. Amoco Oil Co.*, 558 So.2d 903, 905 (quoting *Wilson v. Brown*, 496 So.2d 756, 759 (Ala.1986)). *See also International Rehab. Assoc. v. Adams*, 613 So.2d 1207, 1214–1216 (Ala.1992) (applying elements).[27] Although the parties have not specifically addressed these elements, the court finds that there are genuine issues of fact as to each element such that summary judgment would be inappropriate.

■ The court has specifically considered whether the fact that the purchase agreement gave plaintiffs a right of inspection of the premises is sufficient as a matter of law to hold that the defendants had no duty to disclose the presence of asbestos. Whether a party has a duty to disclose is fact-specific and "depends upon the fiduciary or other relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case." *Norman*, 558 So.2d at 905 (quoting *Hall Motor Co. v. Furman*, 234 So.2d 37 (1970)).

The court has before it no evidence to determine whether plaintiffs exercised their right of inspection and, if they did, whether the presence of asbestos would have been readily discoverable. The evidence presented does suggest a sharp inequality of knowledge regarding the presence of asbestos. Taylor had renovated the office complex, possibly had asbestos removed from parts of the building, and was the president of a construction company. Moreover, the Alabama Supreme Court has acknowledged that a seller or realtor who has knowledge of defects may have an obligation to disclose those defects. *See, e.g., Cooper & Co., Inc. v. Bryant*, 440 So.2d 1016, 1018–19 (Ala.1983). Under these circumstances, the court cannot say as a matter of law that Taylor, Union Bank, and the bank's directors did not have a duty to disclose the presence of asbestos. In addition, because plaintiffs have requested but not yet been provided discovery relevant to this count, the court finds that summary judgment against plaintiffs would be inappropriate. *Snook*, 859 F.2d at 870.

Accordingly, for the reasons set forth above, it is ORDERED:

(1) That the motion to dismiss, filed on August 26, 1993, by defendants J. Theodore Jackson, Jr., and Rushton, Stakely, Johnston & Garrett, P.A., is granted and said defendants are dismissed;

(2) That the motion to dismiss or, in the alternative, for summary judgment, filed on September 24, 1993, by defendants W. Robbins Taylor, Sr., and Standard Realty & In-

---

**26.** Although defendants assert that plaintiffs in *Osborne* based their fraud claims in part on "failures to disclose information about the business," all motions reviewed by the Alabama Supreme Court in that case were "predicated upon the execution by the [parties] of a sales agreement after the *alleged oral representations* had been made." *Osborne*, 628 So.2d at 437 (emphasis added). The holding of *Osborne* is thus limited to fraud claims based on oral representations.

**27.** The Alabama Supreme Court has defined "justifiable reliance" in such a manner that it could not be applied to a claim of fraudulent suppression because the definition assumes that there has been a false *statement*:

"The present standard of 'justifiable reliance' requires the party making a representation to refrain from dishonest, untrue, or recklessly

inaccurate or untrue statements. The party receiving the representation is required to be alert to statements that are patently false. Whereas the old standard of reasonable reliance placed a burden on the party to whom a representation was made—the burden of discerning the truthfulness of a statement—the new standard of justifiable reliance places a burden on the party making the statement—the burden of knowing the truthfulness of a statement."

*Harris v. M & S Toyota, Inc.*, 575 So.2d 74, 77–78 (Ala.1991). *See also Alabama Pattern Jury Instructions, Civil* § 18.05, 18.08, 18.10 (1993) (plaintiff's reliance "upon a positive statement of fact made to him by one with whom he is dealing"). *Id.* at § 18.10. The court has found no Alabama case where a plaintiff pleading fraudulent suppression has been held to a standard of justifiable reliance.

vestment Company, Inc., is granted to the extent relief is sought against defendant Standard Realty & Investment Company, Inc., and denied in all other respects, and that defendant Standard Realty & Investment Company, Inc., is dismissed; and

(3) That the motion for summary judgment, filed on September 7, 1993, by defendants Union Bank & Trust Company and its directors Robert F. Henry, Jr., Thomas B. Hill, Jr., T. Bowen Hill, III, Jim T. Inscoe, Mark W. Johnston, Robert E. Kelly, Henry A. Leslie, Algie Hill Neill, Samuel L. Schloss, C.B. Shewmake, Sr., William G. Thames, Harry J. Till, and John M. Trotman, is denied.